**BASSICK MFG. CO. et al. v. ROGERS PRODUCTS CO., Inc.**

District Court, D. New Jersey.
Nov. 23, 1929.

Fish, Richardson & Neave, of Boston, Mass., and Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill., for complainants.

Dean, Fairbank, Obrieght & Hirsch, of New York City, for defendant.

CLARK, District Judge.

Terrell, K. C., a leading English barrister specializing in patent causes, and the author of a brilliant treatise on the subject, made this observation during the argument of a case before the House of Lords (British Vacuum Cleaner Co. v. London & So. W. Ry., 29 R. P. C. [Eng.] 309, 318) : "Subject matter is a question of fact, and is very difficult to decide, depending on the mechanical ability of the person who decides."

On that theory, this court's predisposition in favor of validity would be great. It confesses to the personal possession of nothing remotely resembling ordinary mechanical skill. In the case at bar, however, the question involved seems rather the mechanics of the court calendars in another federal district.

The present case is the current maneuver in what might be described as guerrilla warfare between corporations manufacturing and distributing lubricating devices for automotive engines. These legal skirmishes seem to have taken place in most, if not all, of the United States courts. In fact, the New Jersey district had, until the inception of this suit, almost occasion to feel slighted. Even the English courts have been favored, and we find two reported cases therein. Tecalemit, Ltd., v. Wakefield, 44 R. P. C. (Eng.) 471; Same v. Ewarts, Ltd., p. 488. For good reason, no doubt, counsel did not refer the court to this English branch of the litigation. It happens, however, to have purchased some years ago the inexpensive and complete set of English patent reports, and thus became cognizant thereof.

The opening gun in the campaign seems to have been a suit brought in the Eastern Division of the Northern District of Ohio by the present complainant, and concluded in its favor by a decree and opinion filed by Judge Westenhaver (a judge whose careful judgments will no longer, unfortunately, instruct his younger brethren). This case and a companion appeal from Judge Hickenlooper of the Western Division of the Southern District of Ohio were affirmed by the Circuit Court of Appeals for the Sixth Circuit in an

opinion filed March 23, 1927, and reported in 18 F.(2d) 29, sub nomine Lyman Mfg. Co. v. Bassick Mfg. Co. The writ of certiorari from this decision was of course denied by the United States Supreme Court (October 31, 1927; 275 U. S. 549, 48 S. Ct. 86, 72 L. Ed. 420), there being no important issue of general patent law or conflict between Circuit Courts of Appeal (Keller v. Adams, 264 U. S. 314, 44 S. Ct. 356, 68 L. Ed. 705). Three bulky volumes furnished the court contain opinions by the judges of twenty districts, thirty-five preliminary injunctions, and sixty final decrees with respect to the present subject-matter. It is unnecessary, therefore, to add to the many more able discussions of the art found in these numerous judicial utterances. Some or all of the prior art patents referred to in some or all of them were naturally offered in the principal case. To make the present writing a coherent whole, however, we might be permitted to summarize.

■ It is common knowledge that automotive engines require frequent applications of grease and/or oil to keep them functioning effectively. As is also familiar to mechanics, such need has been coincident with the use of machinery, and during all the time of the existence of the need it has been met, so far as the court knows, by the introduction of oil or grease (lubricants) in the parts where metallic friction is desired to be reduced. The simplest and original method was, of course, manual. The anatomy of the human hand being manifestly unsuitable for efficient application, a realization of this and a consideration of the problem undoubtedly resulted in the invention of the oil can.

The prior art patents offered only go back as far as July 9, 1867 (Colligon, No. 66,462), which would, the court supposes, postdate the original creation of that useful article. Several of these prior art patents do, however, concern themselves with the oil can industry. The family mowing machine has made most of us familiar with the simplest product of that industry. It consists of a thin spout attached to an oil-containing receptacle, the bottom of which is a sheet of tin, flexible and capable of an in and out movement. We should suppose this is also the oldest form. Three of the prior art patents—Rawhouser (No. 522,087, June 26, 1894), Feit (No. 1,122,710, December 29, 1914), and Bell (No. 1,166,739, January 4, 1916)—are for improvements in this art. The earliest of these—to Rawhouser (1894) —shows a pump cylinder and a piston which is normally kept at the upper end of its travel by means of a suitable spring, together with complementary check valves and pipes. Feit's device embodied a spring-pressed piston within its body tending to eject the oil or contents through the spout. The third oil can (to Bell) shows a suction and ejection effected by the operation of a cylinder piston disposed on the side of the chamber containing the oil. It might very well be argued that these automatic oil cans are sufficient to make the grease gun patents simply an obvious application of the old oil can art to internal combustion engines and to the lubricating medium appropriate to their needs. However that may be, numerous other patents are shown which make the present improvement appear of an even more trivial character, and clearly not proper subject-matter for a patent.

We disregard the patents for the lubricator filler (Clark, No. 555,926), the fire extinguisher (Creamer, No. 1,279,992), the cement (Robertson, No. 483,367), and the two plastic substance patents (Hoffman, No. 889,306, and Fearon, No. 960,081); (one of these last apparently the parent of the irritating hotel and Pullman washroom devices), and the one process patent (Bavier, No. 1,-000,958).

Arbitrarily to classify the remaining prior art patents to some extent detracts from their legal pertinency. However, for purposes of narration, they may be described as follows: Five oil pumps, Colligon (No. 66,462), Felthousen (No. 199,428), Lawrence (No. 295,-562, called an ejector), Hirsch (No. 354,419), and Essex (No. 720,516); two car wheel lubricators, Wurster (No. 356,519) and Gerlinger (No. 997,446); seven grease cups, McCoy (No. 460,212), Liebing (No. 509,668), Lewis (No. 726,314), Allen (No. 910,346), Faul (No. 1,036,215), Mastin (No. 1,141,-720), and Craven (No. 1,234,636) (six having spring-pressed pistons with locking devices); six grease guns, Sherbondy (No. 1,013,454), Ferguson (No. 1,162,997), Runyen (No. 1,-215,313), Wood (No. 1,349,994, called a dispenser), Gullborg (No. 1,707,734), and Parsons (British No. 9,796). Every one of these devices brings about the application of the lubricant (be it liquid or solid) to the machinery (be it steam or gasoline operated) through some form of interlocking joint by means of pressure on the lubricant by spring and leverage, or both combined. Of course, the various apparatus are not identical. They may even inter se show inventive improvements, although the gradual character of such improvement would seem to preclude that. Taken together, and considering the close approach of some of the patents (Sher-

bondy, Wood, and Gullborg) to the patent in suit, they have convinced this tryer of the fact of invention that only a low degree of mechanical skill is indicated by the improvement in suit.

Some of the foregoing views might be interpreted as disagreement with the judgment of the Circuit Court of Appeals in Lyman Mfg. Co. v. Bassick above referred to. Fortunately, the decision of the principal case does not require any such lese majeste. We began this opinion with a reference to the mechanics of the court calendars rather than to that of the lubricating apparatus. The explanation of that reference is this.

The patents declared on in the plethora of litigation before spoken of are other and earlier patents to Winkley and Gullborg. (Winkley seems to be still at it for the Bassick Company.) The judge writing the opinion for the Circuit Court of Appeals for the Sixth Circuit refers to the Winkley patent as the generic one and to the Gullborg patent as a specific improvement thereon. He also expressly based his finding of validity on the fact that a *system* of lubricating automotive engines had been devised.

The Nelson patent now in suit (No. 1,-377,023, May 3, 1921) is for still another specific improvement on Gullborg. Curiously enough, in the English cases cited earlier in this opinion the patents in issue are those to Winkley of May 1, 1916, and the Allyne Zerk Company of July 5, 1923. Even more strange, the prior art cited against the first mentioned consists of six British patents, six United States patents, and one French patent, no one of which is cited in the case at bar; and the prior art cited against the latter shows one French, one British, and six United States patents, no one of which is cited in the principal case. To make confusion worse confounded, the Nelson patent, the one which we are now disposing of, is cited against this Allyne Zerk Company device, which, though later in date of patent, seems from the illustration on page 478 of the English patent report above cited to be nothing more nor less than the device of the Gullborg patent. In other words, we are asked to pass on a specific improvement which the English court was told was an anticipation of its parent. We may say that the English Chancellor, Mr. Justice Romer, escaped from the dilemma in both cases by finding no infringement.

In any event, we feel, as we have intimated, that the improvement relied on indicates at best mechanical skill on the part of the alleged inventor and legal skill on the part of his counsel in avoiding the congestion which we understand prevents a hearing upon some pending suits on the Gullborg patent against this same defendant in another district. In both the Gullborg and Nelson devices we find a cylinder containing compressed grease, a spring, and a plunger for the purposes of expelling the grease into the fittings provided in the automobile engine. The Gullborg screw type compressor derives its name from the fact that the plunger is operated by a handle which turns on the principle of the screw. In the gat gun apparatus, as counsel called the Nelson machine, on the other hand, the plunger is brought into play by means of a lever and link responding to hand pressure on a two-arm pistol grip. In the defendant's device a similar lever is operated by pulling the grip or handle outward instead of pressing it in.

We are quite willing to concede the particular advantages of the Nelson patent set forth on pages 14 to 17 of the complainant's brief. They may be summarized as increased pressure, greater handling convenience, and reduction of grease discharge without decrease of lubricant capacity. If there were not advantages of some kind or another, one could scarcely refer to the subject-matter of the patent as an improvement. The substitution of the immemorial principle of leverage for that of the equally ancient screw does not seem to us anything beyond the comprehension of the average mechanic, and for that reason we find there to be no invention in the claim of the Nelson patent.

The usual claim to validity because of commercial success is advanced. As a matter of fact, it seems uncertain under the proofs whether the commercial success shown is that of any device manufactured under the Nelson patent. Further, as is usual, there seems to be little evidence on the questions of long felt want, business energy, advertising, or what not. We have heretofore, in Tolfree v. Wetzler, 22 F.(2d) 214, discussed at some length what we feel to be the increasing tendency of the courts to give effect to the "commercial success" argument. We wish only to add at this time two quotations from an extremely thought-provoking treatise on the patent law, Patentability and Patent Interpretation, by Roberts, pp. 182 and 248:

"Such a rule, however, would seem to involve the proposition of attempting to solve one doubt by means of another, and thus only to multiply the uncertainties. If commercial success is not a reliable test, but rather a

very dubious one, in respect to the existence of a patentable invention in the thing concerned; how can it tend to resolve a further doubt concerning the intrinsic patentability of what is exemplified by that same thing when regarded by itself, in view of the prior state of the art?"

"Nor, again, is there any valid presumption of patentability to be derived from the fact that since the origination of the thing claimed as an invention in the patent in suit it has been extensively adopted into public use and has become of such commercial value as to cause its monopoly to be strenuously contested. The intrinsic utility of anything whatsoever industrially available is the same whether it happens to be patented or not, and whether it is really patentable or not. To invoke its successful introduction into practice as evidence of its patentability in any case wherein this is disputed is simply fallacious. The long list of formally new contrivances which have been adjudged to be excluded from the category of inventions entitled to protection by patent, contains numerous examples of highly useful and extensively adopted things which could not have had either their utility or their popularity enhanced by judicial affirmation of their right to inclusion in a patent monopoly."

The bill will be dismissed.